UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHRISTOPHER CHARLES EUBANKS
WOOD,

                Petitioner,

v.

JAMES SCHIEBNER,

                Respondent.

_____/

Case No. 1:23-cv-1349

Honorable Paul L. Maloney

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Christopher Charles Eubanks Wood is incarcerated with the Michigan Department of Corrections at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. Following a jury trial in the Kent County Circuit Court, Petitioner was convicted of two counts of armed robbery, in violation of Mich. Comp. Laws § 750.529. On February 27, 2018, the court sentenced Petitioner as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12, to concurrent terms of 30 to 90 years of incarceration.

On December 26, 2023, Petitioner filed his habeas corpus petition, raising the following eleven grounds for relief:

    I.      Petitioner . . . is currently being unlawfully detained and restrained of his liberty in violation of both State and Federal Constitutions.

    II.     The Michigan courts erroneously relied on impermissible identification procedure(s), resulting in a denial of substantial rights.

    III.    Petitioner['s] 5th, 6th, and 14th Amendment [rights] were violated by the trial court's abuse of discretion in failing to suppress the constitutionally impermissible identification, photos, and/or any fruits thereof.

IV.     [Ineffective assistance of counsel] based upon a failure to object to the admission of DNA lab reports, and a violation of Petitioner's right of confrontation.

V.      Petitioner was deprived of effective assistance of counsel by counsel's failure to object to the admission of the known sample of Petitioner's blood, under [the] fruits of the poisonous tree doctrine, and also in violation of [Petitioner's] 4th Amendment rights.

VI.     Defense counsel was ineffective due to his failure(s) to conduct any pretrial preparatory investigation(s) of the State's witnesses, thus violating Petitioner['s] 6th Amendment right to trial counsel for the failure(s) to investigate the witnesses in this matter, resulting in the prejudice that defense counsel was unable to subject the prosecution's case to any true meaningful adversarial testing.

VII.    The jury verdict form in both cases was constitutionally deficient, and has effectively denied [Petitioner his] right to a trial by jury, which requires a reversal of his conviction(s).

VIII.   Petitioner was denied the effective assistance of counsel on direct appeal.

IX.     The prosecutor obtained identification of [Petitioner] as the direct result of police misconduct, in direct violation(s) of [Petitioner's] Sixth Amendment rights to a fair trial, and in direct contrast to the United States Supreme Court precedent found in *Perry v. New Hampshire*, 565 U.S. 228 (2012).

X.      The prosecutor's multiple instances of misconduct violated [Petitioner's] 5th, 6th, and 14th Amendment rights to due process of law, and a fair trial.

XI.     The cumulative effect of the foregoing errors have denied [Petitioner] a fair trial.

(Pet., ECF No. 1, PageID.10–64 (some capitalization and punctuation corrected).) Respondent contends that Petitioner's § 2254 petition should be denied as meritless.[1] (ECF No. 11.) For the

---

[1] Respondent also argues that several of Petitioner's grounds for relief are procedurally defaulted. (ECF No. 11.) Respondent recognizes, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.");

following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal

ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

### Discussion

### I. Factual Allegations and Procedural History

The Michigan Court of Appeals described the events underlying Petitioner's convictions

as follows:

> The prosecutor charged [Petitioner] with two separate robberies. In both instances, the robber entered the store, walked to the drink cooler, chose a drink, and walked to the register to purchase the drink. After the transaction was complete, the robber asked the clerk to make change for a dollar. When the clerk opened the drawer to make change, the robber either stated or implied that he was armed and attempted to take cash out of the open drawer.
>
> During the Walgreens robbery, when the clerk opened the cash drawer, the robber stated that he had a gun and reached into the drawer. The clerk stepped back, put her hands up in the air, and let the robber take all the money out of the cash register. Four days later, the clerk watched the surveillance video of the robbery and she identified [Petitioner] as the robber. A police officer also testified that [Petitioner] was the robber shown on the surveillance video, and the prosecutor played the video for the jury. In addition, police witnesses testified that [Petitioner's] DNA was found on a hat worn by the Walgreens robber.
>
> During the Marathon robbery, the clerk thought the robber was armed because of the way he was lifting up his shirt. The robber put the clerk in a chokehold while demanding money. The clerk refused to comply, locked the cash drawer, and pushed the robber out. As the robber left the gas station, he threatened that he was going to come back for the clerk. Shortly after the robbery, the owner of the gas station showed the clerk the surveillance video of the robbery. The Marathon clerk identified [Petitioner] as the robber.
>
> The surveillance video of the Marathon robbery was also shown on television, and one of [Petitioner's] federal probation officers recognized [Petitioner] from the video. She contacted local police and identified [Petitioner] as the robber. The

---

*see also Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, rather than conduct a lengthy inquiry into exhaustion and procedural default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claims.

probation officer testified at trial that she recognized [Petitioner] by his profile and a distinctive coat that he wore. Furthermore, a police witness testified that when he arrested [Petitioner] the day after the Marathon robbery, [Petitioner] was wearing "virtually the exact clothes depicted in the surveillance footage from the robbery."

At trial, [Petitioner] challenged evidence of the Marathon clerk's in-court identification of him as the robber, arguing that before her testimony at the preliminary examination, the prosecutor showed the clerk an impermissibly suggestive photograph—in which [Petitioner] was wearing handcuffs—and that this tainted the clerk's in-court identification of [Petitioner]. The trial court held an evidentiary hearing outside the presence of the jury regarding the photograph shown to the clerk. The clerk's testimony on this point is contradictory: the clerk testified that defense counsel showed her a photo, then testified that the prosecutor showed her a photo, then testified that she could not remember who showed her the photo. At times, she stated that she saw one photo, and at other times, she stated that she saw two photos. Outside the presence of the jury, however, the prosecutor testified that he did not show the witness any photographs until cross-examination. The trial court found the prosecutor's testimony more credible than the clerk's testimony, found that the clerk's in-court identification was not obtained through unnecessarily suggestive means, and ruled that the clerk's in-court identification of [Petitioner] was admissible.

Aside from her testimony regarding the photograph shown to her at [Petitioner's] preliminary examination, the Marathon clerk testified that she had a good opportunity to see [Petitioner] during the offense: in the well-lit gas station, she watched him enter the store, walk to the drink coolers, take a drink, walk back to the register, and begin the transaction. The clerk also had an opportunity to observe [Petitioner] up close when he physically grabbed her and told her to give him money from the cash drawer. Her in-court identification occurred less than one month after the robbery, and she was able to provide a detailed description of the robber that matched [Petitioner], which she did consistently throughout the proceedings. The clerk neither identified anyone else as the robber, nor did she ever express doubt that [Petitioner] was the robber; she testified that she was "100 percent sure" that [Petitioner] was the man who robbed her. Finally, the clerk testified multiple times that her in-court testimony was uninfluenced by the photograph she saw before the preliminary examination. The clerk stated repeatedly that her identification was based on her independent recollection of the robbery and her close encounter with the robber.

*People v. Wood*, No. 342900, 2019 WL 4389161, at *1–2 (Mich. Ct. App. Sept. 12, 2019).

Jury selection for Petitioner's trial occurred on February 5, 2018. (Trial Tr. I, ECF No. 12-8.) Over the course of two days, the jury heard testimony from numerous witnesses, including law

enforcement officers, the Marathon clerk, the Walgreen's cashier, a forensic scientist with the Michigan State Police, the prosecutor who had handled Petitioner's preliminary examination, and the mother of Petitioner's children. (Trial Tr. II & III, ECF Nos. 12-9 and 12-10.) On February 8, 2018, after only a little over an hour of deliberation, the jury reached a guilty verdict. (Trial Tr. IV, ECF No. 12-11, PageID.1201–1202.) Petitioner appeared before the trial court for sentencing on February 27, 2018. (ECF No. 12-12.)

Petitioner, with the assistance of counsel, appealed his convictions and sentences to the Michigan Court of Appeals, asserting the following claims for relief: (1) the Marathon clerk's in-court identification should have been suppressed; (2) the jury was improperly shown a prejudicial photograph of Petitioner in handcuffs and wearing similar clothing to what the robber was wearing when he committed the Marathon robbery; (3) the trial court erred by conducting a joint trial for both armed robbery charges; (4) the trial court erred by conducting a joint trial because evidence of each robbery was inadmissible in the other case pursuant to Michigan Rule of Evidence 404(b); and (5) counsel rendered ineffective assistance in numerous ways. *See Wood*, 2019 WL 4389161, at *2–8. The court of appeals affirmed Petitioner's convictions and sentences on September 12, 2019. *Id.* at *1. The Michigan Supreme Court denied Petitioner's application for leave to appeal on April 29, 2020. *See People v. Wood*, 941 N.W.2d 635 (2020).

On May 7, 2021, Petitioner returned to the trial court and filed a motion for relief from judgment pursuant to Michigan Court Rule 6.500, asserting as his claims for relief the three claims he now raises as habeas grounds VIII, IX, and X, as well as several ineffective assistance of counsel claims and a cumulative error claim. (ECF No. 12-15.) The trial court denied Petitioner's motion in an opinion and order entered on February 7, 2022. (ECF No. 12-16.) The court of appeals and supreme court denied Petitioner's applications for leave to appeal on December 28, 2022, and

5

October 31, 2023, respectively. (ECF No. 12-19, PageID.1722; ECF No. 12-20, PageID.1821.) This § 2254 petition followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to

6

an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate

courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.   Discussion

### A.   Ground I—Bindover and Arraignment Issues/Actual Innocence

As his first ground for relief, Petitioner contends that he is "being unlawfully detained and restrained of his liberty." (Pet., ECF No. 1, PageID.10.) He also suggests that he was never arraigned on an armed robbery charge because it was "an amendment of the unarmed robbery, on which [Petitioner] was arraigned." (*Id.*, PageID.14.) Petitioner suggests that he never received notice of the armed robbery charge, and that the trial court lacked subject-matter jurisdiction to

proceed because he was not properly arraigned. (*Id.*) As part of this ground for relief, Petitioner also asserts that he is actually innocent. (*Id.*, PageID.11.)

### 1. Bindover/Arraignment/Subject-Matter Jurisdiction

Petitioner raised his assertions regarding the bindover and lack of arraignment as part of an ineffective assistance of counsel claim in his Rule 6.500 motion. The trial court rejected Petitioner's assertions, stating:

> [Petitioner] first argues that his trial counsel was ineffective for failing to raise the argument that [Petitioner] was never arraigned on the armed robbery charge in Case No. 17-02032-FC. The armed robbery charge of Case No. 17-0232-FC was added when [Petitioner] chose to run a preliminary examination on March 1, 2017. At that examination, the district court Judge concluded[,] "I think there is sufficient evidence to bind over Mr. Wood, based on probable cause" for both charges of Case No. 17-02032-FC and Case No. 17-07323-FC. "In a criminal case, due process generally requires reasonable notice of the charge and an opportunity to be heard." *In re Oliver*, 333 U.S. 257, 273 (1948). [Petitioner] was put on notice prior to or at the preliminary examination of the addition of the charge of Case No. 17-0232 and was given an opportunity to be heard at that time.
>
> Moreover, the Michigan Supreme Court has held that "the presence of defense in court through a trial of the cause upon the merits represented by counsel, who failed to call attention to the omission of arraignment and plea, was a waiver of his right thereto." *People v. Weeks*, 165 Mich. 362, 364; 130 N.W. 697 (1911). The *Weeks* Court also indicated that a failure to arraign is a defect that is "merely technical, affecting no substantial right whatever" and that "[w]here the prisoner appears with his own counsel, the omission formally to arraign and ask for a plea is immaterial to his rights and may be deemed to be waived." *Id.* at 365 (quotation marks and citation omitted).

(ECF No. 12-16, PageID.1429 (parallel citations for *In re Oliver* omitted).)

The Fourteenth Amendment's Due Process Clause mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him so as to provide him an adequate opportunity to prepare his defense. *See Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977). This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. *Combs v.*

*Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976). Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial. *Id.* "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)). "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira*, 806 F.2d at 639. In other words, as long as "sufficient notice of the charges is given in some . . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Watson*, 558 F.2d at 338.

Moreover, the determination of whether a particular state court is vested with jurisdiction under state law and is the proper venue to hear a criminal case is a "function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976). Moreover, "a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001).

The Michigan Supreme Court has described the concept of subject matter jurisdiction as follows: "Subject matter jurisdiction concerns a court's abstract power to try a case of the kind or character of the one pending and is not dependent on the particular facts of the case." *People v. Lown*, 794 N.W.2d 9, 23 (Mich. 2011) (internal quotation marks and emphasis omitted). "Michigan circuit courts are court of general jurisdiction and unquestionably have jurisdiction over felony cases." *Id.*; *see also* Mich. Const. of 1963, art. 6, §§ 1 & 13; Mich. Comp. Laws §§ 600.151, 600.601, and 767.1. Any purported violation of these state jurisdictional laws does not provide a basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Additionally, with respect to Petitioner's argument that he was not arraigned, thereby violating due process, the Supreme Court has long held that due process "does not require the state to adopt any particular form of procedure, so long as it appears that the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself." *Garland v. Washington*, 232 U.S. 642, 645 (1914). Thus, under this test, "it cannot for a moment be maintained that the want of formal arraignment deprived the accused of any substantial right, or in any wise changed the course of trial to his disadvantage." *Id.*

The record reflects that when Petitioner's preliminary examination began on February 15, 2017, the prosecutor informed the trial court that "[t]he People do intend to, if the proofs do support the charge, move for bind over on an armed robbery life offense count because of gesture— gestures that were made during the course of the robbery that suggested to the victim that he was in fact armed." (ECF No. 12-2, PageID.975.) Petitioner interrupted the prosecutor, stating: "That's cool. I'm innocent." (*Id.*) The trial judge advised Petitioner that if the testimony supported the armed robbery charge, the court would be "grant[ing] that request and [Petitioner would] have these very, very serious, more serious than they are now," charges brought against him. (*Id.*) Petitioner acknowledged his understanding. (*Id.*) The trial court adjourned the preliminary examination so that Petitioner could have more time to discuss his options with counsel. (*Id.*, PageID.977.)

The parties appeared before the district court for Petitioner's preliminary examination on March 1, 2017. (ECF No. 12-3.) At the outset, Petitioner's counsel advised the court that there were "likely to be additional charges brought if he runs the examination today, that being armed robbery is our understanding, a life offense." (*Id.*, PageID.985.) Counsel represented that Petitioner "understands all of this, and he comprehends it, and that he wants to move forward with the

11

examination today." (*Id.*) At the end of testimony, the district court concluded that probable cause existed to bind over Petitioner "for both the unarmed robbery and the armed robbery." (*Id.*, PageID.1029.)

The parties returned to the district court on August 9, 2017, for another preliminary examination in Case No. 17-07323-FH. (ECF No. 12-6.) The district court indicated that the case was scheduled for a preliminary examination on one count of armed robbery. (*Id.*, PageID.1047.) The prosecution notified the court that Petitioner had another armed robbery case pending. (*Id.*, PageID.1048.) At the end of the hearing, the district court concluded that probable cause existed to bind Petitioner over on an armed robbery charge. (*Id.*, PageID.1072.) The court asked Petitioner's counsel if Petitioner should be arraigned, and counsel represented that they were waiving arraignment. (*Id.*)

After consideration of the foregoing, Petitioner offers no basis to challenge the Kent County Circuit Court's subject matter jurisdiction over his criminal prosecution and no basis to conclude that his challenge to subject matter jurisdiction might rise to the level of a federal constitutional violation. Likewise, Petitioner clearly received adequate notice of both armed robbery charges well before his trial began on February 5, 2018. Petitioner offers no argument to suggest that he was unable to adequately prepare a defense on those charges. Moreover, the record reflects that Petitioner waived arraignment in Case No. 17-07323-FH. Accordingly, because Petitioner cannot demonstrate that the trial court's rejection of this claim was contrary to, or an unreasonable application of, clearly established federal law, he is not entitled to relief with respect to this aspect of habeas ground I.

## 2.    Actual Innocence

As noted *supra*, Petitioner contends that he is actually innocent of the two armed robberies for which he was convicted. (Pet., ECF No. 1, PageID.11.) He asserts that he has provided photographs that show that he is not the suspect. (*Id.*)

Any claim of actual innocence, however, fails to state a cognizable federal claim. The Supreme Court has held that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). But the *Herrera* Court did not close the door completely, stating in dicta: "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417. Thus, even without the occurrence of any independent constitutional violation during the state criminal proceeding, federal habeas relief might be warranted for "truly persuasive demonstration of actual innocence," provided: (1) the habeas petition seeks relief in a capital case, in which case such a demonstration of actual innocence "would render the execution of a defendant unconstitutional"; and (2) there is "no state avenue open to process such a claim." *Id.* The Supreme Court emphasized that "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.*; *see also House v. Bell*, 547 U.S. 518, 555 (2006) ("In *Herrera*, however, the Court described the threshold for any hypothetical freestanding innocence claim as 'extraordinarily high.'"); *Cress v. Palmer*, 484 F.3d 844, 854–55 (6th Cir. 2007).

Two years after *Herrera*, the Supreme Court held that a claim of actual innocence can be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's]

constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise procedurally barred habeas petition. *Schlup*, 513 U.S. at 317. The actual innocence claim in *Schlup* is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 315 (citing *Herrera*, 506 U.S. at 404). Thus, the Supreme Court distinguished between a procedural innocence claim, which can permit a petitioner to overcome procedural obstacles that would otherwise preclude review of underlying constitutional claims, and a substantive or "free-standing" claim of innocence discussed in *Herrera*.

This Court may grant habeas corpus relief only when the state court has violated or unreasonably applied a clearly established holding of the Supreme Court. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412. In the absence of clearly established Supreme Court precedent establishing a free-standing claim of actual innocence, Petitioner's claim is without merit. The Sixth Circuit repeatedly has held that free-standing claims of actual innocence are not cognizable on habeas corpus review. *See Smith v. Nagy*, 962 F.3d 192, 206 (6th Cir. 2020) (citing *Schlup* and *Herrera*); *Cress*, 484 F.3d at 854 (citing cases). Even if Petitioner could invoke this exception and obtain habeas relief on his freestanding innocence claim, he would have to meet both of the requirements set forth above and then overcome the "extraordinarily high" threshold. Petitioner fails the first requirement. This is not a capital case, and thus, the concern about the unconstitutionality of executing a defendant who has shown persuasive evidence of actual

14

innocence is not implicated. *See Herrera*, 506 U.S. at 417 ("We first point out the obvious - that this is not, in fact, a capital case."). Accordingly, Petitioner cannot obtain habeas corpus relief on any freestanding claims of actual innocence, and he is not entitled to habeas relief with respect to this portion of habeas ground I.

In sum, Petitioner's challenges to the bindover, the lack of arraignment, the court's subject-matter jurisdiction, and the lack of notice of the armed robbery charge are meritless, and Petitioner cannot maintain his freestanding actual innocence claim in this federal habeas corpus proceeding. Accordingly, Petitioner is not entitled to relief with respect to habeas ground I.

### B. Grounds Implicating Eyewitness Identification Procedures

Petitioner raises two grounds for relief that implicate the eyewitness identifications made in his case. In habeas ground II, Petitioner contends that the "Michigan Courts erroneously relied on impermissible identification procedure(s)." (Pet., ECF No. 1, PageID.13.) According to Petitioner, the prosecutor "showed the Government's key witness only 1 photograph of [Petitioner] in handcuffs, prior to the [government] witness providing testimony, and making an [i]dentification of Petitioner." (*Id.*) In habeas ground IX, Petitioner suggests that the prosecutor obtained identification of Petitioner "as the direct result of police misconduct." (*Id.*, PageID.64.)

On the third day of trial, prior to the jury being brought into the courtroom, the trial court conducted a short evidentiary hearing regarding the photo that was presented to the Marathon clerk before the preliminary examination. (Trial Tr. III, ECF No. 12-10, PageID.1156.) The clerk testified that shortly before the February 22, 2017, preliminary examination, she was shown a photograph of a person "in front of the counter, it was a person in totally black." (*Id.*, PageID.1157.) The clerk testified that Petitioner's counsel at the time had showed her a photograph, and that the prosecutor showed her a different photograph. (*Id.*) She testified that the

photograph that the prosecutor showed her was a "full frontal" photograph of Petitioner. (*Id.*, PageID.1157–1158.) During the preliminary examination, the clerk testified that she had been shown two photographs before the hearing. (*Id.*, PageID.1158.) The clerk testified that prior to the preliminary examination, she had an idea of what the suspect looked like. (*Id.*, PageID.1159.) She acknowledged that she was not really paying attention to Petitioner during that hearing. (*Id.*) The clerk testified that she recognized Petitioner as the individual involved in the offense because the "memory of his face [was] embedded" in her mind after she was put into a choke hold. (*Id.*, PageID.1161.)

The court also heard testimony from the prosecutor who handled the preliminary examination. When asked if he had shown the clerk any photographs related to this case, the prosecutor responded, "No, no, I did not." (*Id.*, PageID.1162.) When asked if he would have shown any photographs, the prosecutor replied, "I have never in my career. . . . I don't show evidence to a witness or a victim prior to testimony, and I don't believe I ever have. That's not something— and, if I can, I would have had no reason to show her photographs in this particular case." (*Id.*, PageID.1162–1163.) The prosecutor acknowledged that he introduced photographs during his redirect at the preliminary examination. (*Id.*, PageID.1163.)

The trial court accepted the prosecutor's testimony that "he did not show photographs to [the clerk] prior to her testimony." (*Id.*, PageID.1164.) The trial court went on to state:

> In any case, it seems to me the dispositive testimony on this whole issue is that of [the clerk] when she says she can independently identify the defendant irrespective of whether she was shown photographs during the preliminary examination or before the preliminary examination or both. She had an up close and personal encounter with the defendant under most unpleasant circumstances, and she says that she remembers him independently and can identify him without reference to having seen any photographs at any time. And I believe that is simply the end of the inquiry.

16

So I will allow the witness's testimony. I will also allow Mr. Pyrski to engage in whatever cross-examination he may have on some of these points. The witness is clearly confused about certain details, and that may be fair game on cross-examination. But I believe the issue goes to the weight of the testimony rather than its admissibility, and I will accept [the clerk's] identification testimony in open court.

(*Id.*)

The jury was then called into the courtroom, and the Marathon clerk testified. During direct

examination, the prosecutor and the clerk engaged in the following colloquy:

> Q:   Okay. Now, that individual that we're talking about, is he in the courtroom today?
>
> A:   Yes, he is.
>
> Q:   Okay. Can you describe something he's wearing?
>
> A:   (Pause). Do I have to look at him?
>
> Q:   You have to—unfortunately, just briefly, yes.
>
> A:   Ugh. I remember he had no hair on his head, and he did, yep, and that facial hair.
>
> Q:   Okay.
>
> A:   It was just a little bit thinner than what he's got now.
>
> Q:   Okay.
>
> A:    But yeah, it's him. I got real close and personal with him that day.
>
> Q:   And—and you were very descriptive with regard to the police and beard. If you can explain to the jury what you remember about his beard.
>
> A:   It was a close—a close shaven beard like it's to the face and it's really perfect. It like shaped his face.

(*Id.*, PageID.1166.) The prosecutor then showed the clerk a photograph of Petitioner, and she noted

that the photograph showed what she recalled the beard looking like at the time of the robbery.

17

(*Id.*) The clerk testified that her identification was based on her independent recollection, and that she had been in close proximity with Petitioner during the robbery. (*Id.*, PageID.1167.)

Due process provides a "check on the admission of eyewitness identification, applicable when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012). As summarized in *Perry*, the Supreme Court has developed a two-part test for determining whether evidence gathered from an eyewitness identification must be excluded from trial due to the unduly suggestive nature of the identification procedure. *Id.* at 238–39 (citing *Neil v. Biggers*, 409 U.S. 188, 196 (1972), and *Manson v. Brathwaite*, 432 U.S. 98, 107 (1997)). First, the *Perry* court stated that "due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Id.* Second, even when the police use such a procedure, suppression of the resulting identification is required only when, under the totality of the circumstances, the "improper police conduct created a 'substantial likelihood of misidentification.'" *Id.* at 239 (quoting *Brathwaite*, 432 U.S. at 116). The central concern in the second part of the inquiry is the reliability of the identification, and whether "the 'indicators of [a witness'] ability to make an accurate identification' are 'outweighed by the corrupting effect' of law enforcement suggestion." *Id.* (quoting *Brathwaite*, 432 U.S. at 114).

Petitioner raised his challenges to the eyewitness identification procedures on both direct appeal and in his Rule 6.500 motion. On direct appeal, the court of appeals addressed Petitioner's claims under the following standard:

> Due process protects defendants from pretrial identifications obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227; 98 S. Ct. 458; 54 L. Ed. 2d 424 (1977); *Hickman*, 470 Mich. at 607. "In order to sustain a due process challenge, a defendant must show that the pretrial identification

18

procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *Kurylczyk*, 443 Mich. at 302.

> When examining the totality of the circumstances, relevant factors include: the opportunity for the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of a prior description, the witness' level of certainty at the pretrial identification procedure, and the length of time between the crime and the confrontation. [*People v. Colon*, 233 Mich. App. 295, 304–305; 591 N.W.2d 692 (1998).]

If the witness's in-court identification is based on a sufficiently independent basis, however, that may "purge the taint" of an illegal identification. *Id.* at 304. To determine if an independent basis for identification exists, the following factors are relevant:

> 1. Prior relationship with or knowledge of the defendant.
>
> 2. The opportunity to observe the offense. This includes such factors as length of time of the observation, lighting, noise or other factor[s] affecting sensory perception and proximity to the alleged criminal act.
>
> 3. Length of time between the offense and the disputed identification . . . .
>
> 4. Accuracy or discrepancies in the pre-lineup or showup description and defendant's actual description.
>
> 5. Any previous proper identification or failure to identify the defendant.
>
> 6. Any identification prior to lineup or showup of another person as defendant.
>
> 7. [The mental state of the witness at the time of the crime.]
>
> 8. Any idiosyncratic or special features of defendant. [*People v. Kachar*, 400 Mich. 78, 95–96; 252 N.W.2d 807 (1977).]

*Wood*, 2019 WL 4389161, at *2–3. Although the court of appeals primarily cited state law, the standard set forth is functionally identical to the *Perry* standard set forth *supra*. Thus, there is no question that the court of appeals applied the correct standard.

The trial court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

19

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Petitioner, therefore, can only overcome the deference afforded state court decisions if the state courts' determinations were based on an unreasonable application of the standard—here *Perry*, rather than *Strickland*—or if the resolutions were based on unreasonable determinations of the facts. *See* 28 U.S.C. § 2254(d).

After setting forth the standard, the court of appeals rejected Petitioner's arguments concerning the suggestive identification, stating:

> [Petitioner] argues that the prosecutor violated his due-process rights by showing the Marathon clerk an impermissibly suggestive photograph of him before the preliminary examination. This argument is without merit. The trial court was uniquely situated to judge the credibility of the witnesses before it. *See* MCR

2.613(C). Given the competing testimony and the trial court's conclusion that the prosecutor's testimony was more credible than the clerk's testimony, the trial court did not clearly err when it concluded that the prosecutor did not show the clerk any photographs before the preliminary examination. *See* MCR 2.613(C). Therefore, the trial court did not err in concluding that the clerk's in-court identification of [Petitioner] was not obtained in an unnecessarily suggestive manner. *See Kurylczyk*, 443 Mich. at 302. [Petitioner] is not entitled to relief on this issue. *See Hickman*, 470 Mich. at 607; *Kurylczyk*, 443 Mich. at 302.

Additionally, even if the prosecutor had shown the clerk an unduly suggestive photograph before the preliminary examination, her in-court identification remains admissible because she had an independent basis for identifying [Petitioner] as the robber. The clerk had the opportunity to observe [Petitioner] closely during the robbery; she identified [Petitioner] within one month of the robbery; she consistently provided a description of the robber that matched [Petitioner]; and she never expressed doubt that [Petitioner] was the robber. Applying the *Kachar* factors, the clerk's testimony shows that she had an independent basis for the identification. Therefore, the trial court did not err when it admitted the clerk's in-court identification of [Petitioner] as the robber. *See Kachar,* 400 Mich. at 95–96.

*Wood*, 2019 WL 4389161, at *3. Petitioner reiterated his due process claim in his Rule 6.500 motion, and the trial court summarily rejected it, noting that it could not "substitute its judgment for that of the Court of Appeals." (ECF No. 12-16, PageID.1427–1428.)

Petitioner faults the identification procedure used with the Marathon clerk as being highly suggestive because the clerk was allegedly only shown one photograph—a photograph of Petitioner. (Pet., ECF No. 1, PageID.21.) When determining whether an identification procedure using photographs was unnecessarily suggestive, "the court may consider 'the size of the [photographic] array, the manner of its presentation by the officers, and the details of the photographs themselves.'" *United States v. McComb*, 249 F. App'x 429, 437 (6th Cir. 2007) (citing *United States v. Sanchez*, 24 F.3d 1259 (10th Cir. 1994)); *see also United States v. Wade*, 388 U.S. 218 (1967). The second step of the inquiry requires consideration of a number of factors, including:

1) the witness's opportunity to view the criminal at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness's prior description of

the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation.

*McComb*, 249 F. App'x at 437 (citing *United States v. Beverly*, 369 F.3d 516 (6th Cir. 2004); *see also Haliym*, 492 F.3d at 704 (citing *Brathwaite*, 432 U.S. at 114, and *Biggers*, 409 U.S. at 199–200). If "the first step of the requisite analysis ends in the government's favor, [the court] need not address" the second step of the inquiry. *United States v. Stamper*, 91 F. App'x 445, 462 (6th Cir. 2004).

As noted above, the state courts concluded that the prosecutor who handled the preliminary examination was more credible than the clerk regarding whether photographs had been shown to her prior to the hearing. Such a credibility determination is a factual determination that this Court must presume to be correct. *See Wesson v. Shoop*, 17 F.4th 700, 705 (6th Cir. 2021) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 339–40 (2003); *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Petitioner can overcome that presumption with clear and convincing evidence. He offers nothing.

Moreover, to the extent Petitioner takes issue with the clerk's in-court identification of him, the Supreme Court has acknowledged that in-court identifications are inherently "suggestive." *See Perry*, 556 U.S. at 244 (noting that "[m]ost eyewitness identifications involve some element of suggestion. Indeed, all in-court identifications do"). However, the fact that an identification procedure is suggestive does not, standing alone, implicate due process protections. *See id.* at 239. Instead, there must be "improper law enforcement activity" before a suggestive identification requires further scrutiny. *See id.* Because *Perry* identified in-court identifications as a type of suggestive identification that does not implicate due process protections, and because Petitioner has not shown any evidence of "improper law enforcement activity" here, no constitutional error regarding the clerk's in-court identification of Petitioner occurred. Moreover, Petitioner offers

nothing to overcome the court of appeals' conclusion that the in-court identification was premised upon an independent basis for identifying Petitioner.

In sum, because Petitioner has failed to demonstrate that the state courts' rejection of his claims regarding the identification procedures was contrary to, or an unreasonable application of, clearly established federal law, Petitioner is not entitled to relief with respect to habeas grounds II and IX.

### C.      Ground III—Admission of Prejudicial Photograph

In habeas ground III, Petitioner contends that the trial court should have suppressed a photograph of Petitioner in handcuffs, as well as any "fruits obtained" therefrom, because "it was an unduly suggestive [i]dentification [p]rocedure" that violated Petitioner's Fifth, Sixth, and Fourteenth Amendment rights. (Pet., ECF No. 1, PageID.36.) Specifically, Petitioner contends that the trial court erred in admitting the photograph because it was "analogous to forcing him to appear before a jury in handcuffs or shackles." (*Id.*, PageID.38.)

Petitioner raised this claim on direct appeal, and the court of appeals concluded that it was waived. *Wood*, 2019 WL 4389161, at *3. Specifically, the court of appeals noted: "In this case, when the prosecutor presented the photograph for admission into evidence, defense counsel stated that he had 'no objection.'" *Id.* As noted above, the Court has already concluded that the state courts reasonably concluded that the identification procedure used was not unduly suggestive and did not violate Petitioner's constitutional rights. The Court, therefore, construes habeas ground III to be a challenge to the trial court's evidentiary decision regarding admission of the photograph in question.

The record reflects that on the first day of trial, prior to *voir dire*, the court took up pretrial motions and matters raised by the parties. Notably, during that time, Petitioner's counsel noted

23

that he had filed a motion to exclude photographic evidence. (Trial Tr. I, ECF No. 12-8, PageID.1084.) Specifically, Petitioner's counsel noted:

> At one point in the Wyoming case my client is photographed while he's handcuffed and very apparently in custody, and they used those photographs to—well, they were in—they were in the discovery packet that the prosecutor sent over. I don't want the jury to see those because he's in handcuffs, and he's apparently—he's obviously in custody, and that would be prejudicial to the case. It's not really relevant beyond that.

(*Id.*) In response, the prosecutor stated that the photograph was highly prejudicial "not because he's in handcuffs, but because when he's arrested the day after, he's wearing the exact same outfit that he was wearing during the commission of the offense, so that's why Mr. Pyrski is actually trying to exclude this evidence." (*Id.*) Petitioner's counsel replied that the picture was also an issue because it was used for an in-court identification at the preliminary hearing. (*Id.*, PageID.1085.) Ultimately, the trial court concluded that the photograph was admissible "for the reasons indicated by the prosecutor if it shows the defendant wearing the same clothing he was wearing at the time of the commission of one of these offenses, it's clearly highly probative evidence." (*Id.*)

As an initial matter, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). The court of appeals' conclusions that the trial court's evidentiary

24

rulings in question did not violate Petitioner's rights under state law are, therefore, axiomatically correct.

It is possible that an evidentiary ruling—even a ruling that is axiomatically correct under state law—still violates due process. State-court evidentiary rulings can rise to the level of due process violations if they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders*, 221 F.3d at 860; *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "a Supreme Court case establishing a due process right with regard to the specific kind of evidence at issue").

In support of his claim, Petitioner cites *Taylor v. Kentucky*, 436 U.S. 478 (1978). In *Taylor*, the United States Supreme Court addressed the question of whether the Fourteenth Amendment's Due Process Clause requires that jury instructions regarding the presumption of innocence and an indictment's lack of evidentiary value be given when the defense makes a timely motion for such instructions. *See id.* at 479. The Court held that under the facts presented, the trial court's refusal to give the instruction regarding presumption of innocence violated the defendant's due process

25

rights. *See id.* at 490. Petitioner, however, does not explain, and the Court does not discern, how the Supreme Court's decision in *Taylor* has any bearing on whether admission of the photograph in question violated Petitioner's due process rights.

Petitioner has not cited, and the Court has not located, any clearly established Supreme Court precedent holding that a state violates due process by admitting a photograph of a defendant in handcuffs. Thus, Petitioner cannot demonstrate that the rejection of his claim concerning the admission of the photograph is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground III.

### D.    Grounds Asserting Ineffective Assistance of Counsel

In habeas grounds IV, V, and VI, Petitioner contends that trial counsel rendered ineffective assistance in various ways. In habeas ground VIII, Petitioner alleges that appellate counsel rendered ineffective assistance.

### 1.    Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the [Petitioner] resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic

26

decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the [Petitioner] is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. However, a criminal appellant has no constitutional right to have every non-frivolous issue raised on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the

distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Furthermore, scrutiny of the state

court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In

light of that double deference, the question before the habeas court is "whether there is any

reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*,

687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again

underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA

. . . ." (citing *Harrington*, 562 U.S. at 102)).

The ineffective assistance claims that Petitioner now asserts are ones that he raised in his

Rule 6.500 motion. The trial court addressed those claims under the following standard:

> To prove ineffective assistance of counsel, a defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v. Trakhtenberg*, 493 Mich. 38, 51; 826 N.W.2d 136, 143 (2012). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id.* at 52. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v. Rockey*, 237 Mich. App. 74, 76; 601 N.W.2d 887 (1999). The fact that defense counsel's strategy ultimate failed does not render it ineffective assistance of counsel. *People v. Stewart*, 219 Mich. App. 38, 42; 555 N.W.2d 715 (1996). Finally, the failure to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel. *People v. Ericksen*, 288 Mich. App. 192, 201; 793 N.W.2d 120 (2010).

(ECF No. 12-16, PageID.1428–1429 (parallel citations for *Strickland* omitted).) Although the state

court primarily cited to state authority, the standard set forth is functionally identical to the

*Strickland* standard set forth *supra*. Thus, there is no question that the trial court applied the correct

standard.

Therefore, Petitioner can only overcome the deference afforded state court decisions if the trial court's determinations were based on an unreasonable application of *Strickland* or if the trial court's resolutions were based on unreasonable determinations of the facts. *See* 28 U.S.C. § 2254(d).

### 2. Trial Counsel

#### a. Failure to Object to Admission of DNA Lab Reports

In habeas ground IV, Petitioner contends that counsel was ineffective for failing to object to the admission of the DNA reports from the state police laboratory. (Pet., ECF No. 1, PageID.41.) Petitioner contends that the State's expert testified regarding reports prepared by other individuals, and that by doing so, the expert violated Petitioner's rights under the Sixth Amendment's Confrontation Clause. (*Id.*) According to Petitioner, the expert, David Hayhurst, "had minimal to no actual involvement in the forensic analysis of the DNA evidence in this case and was basing [his] opinion on the reports generated by non-testifying witnesses." (*Id.*, PageID.46.)

Petitioner raised this claim in his Rule 6.500 motion. The trial court noted that while admission of and testimony concerning the non-testifying individuals' analysis "may have violated the Confrontation Clause," counsel was not ineffective "for failing to object to its admission because [Petitioner] has failed to establish actual prejudice." (ECF No. 12-16, PageID.1431.) The trial court noted that "[e]ven if Exhibit 18 and the related testimony was improperly admitted, the admission of and testimony regarding Exhibit 17—properly admitted as the testifying witness' report—had already conclusively established that the DNA in question matched that of [Petitioner]." (*Id.*)

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const. amend VI; *Pointer v. Texas*, 380 U.S. 400,

29

403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause, therefore, prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004).

At trial, David Hayhurst, a forensic scientist at the Michigan State Police forensic laboratory in Grand Rapids, testified. (Trial Tr. II, ECF No. 12-9, PageID.1140.) During direct examination, Hayhurst testified that he did not "collect the evidentiary sample" in Petitioner's case. (*Id.*, PageID.1142.) Instead, a hat was submitted to the laboratory. (*Id.*) Another analyst swabbed the hat and submitted the sample for testing. (*Id.*) A different analyst conducted the DNA analysis of Petitioner's blood sample. (*Id.*) Hayhurst testified that he was the one who conducted the comparison of the "evidentiary profile that was previously obtained" from the hat swab to the blood sample profile. (*Id.*) During direct examination of Hayhurst, the State introduced Exhibit 17, which was a copy of the report that Hayhurst prepared. (*Id.*, PageID.1145.) That report detailed the evidence that was received for comparison and included Petitioner's conclusions regarding the comparison. (*Id.*) During redirect examination, the State introduced Exhibit 18, which was a copy of the database association report prepared by the analyst who ran the DNA sample from the hat through the database and obtained Petitioner's name for potential comparison to a known sample. (*Id.*, PageID.1146.)

The prohibition set forth in *Crawford* applies "in full to forensic evidence." *See Smith v. Arizona*, 602 U.S. ----, 144 S. Ct. 1785, 1791 (2024). Accordingly, "a prosecutor cannot introduce

an absent laboratory analyst's testimonial out-of-court statements to prove the results of forensic testimony." *See id.* (citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 307 (2009)). Recently, the United States Supreme Court considered the "application of those principles to a case in which an expert witness restates an absent lab analyst's factual assertions to support his own opinion testimony." *Id.* In *Smith*, the Court held:

> When an expert conveys an absent analyst's statements in support of his opinion, and the statements provide that support only if true, then the statements come into evidence for their truth. As this dispute illustrates, that will generally be the case when an expert relays an absent lab analyst's statements as part of offering his opinion. And if those statements are testimonial too—an issue we briefly address but do not resolve as to this case—the Confrontation Clause will bar their admission.

*See id.*

As an initial matter, it is clear that Petitioner's counsel did not have the benefit of *Smith* at the time of Petitioner's trial. Moreover, the trial court concluded that even if Petitioner's Confrontation Clause rights were violated, Petitioner failed to demonstrate any actual prejudice from the admission of the non-testifying analysts' statements. Here, the Court need not determine whether the trial court correctly noted a potential violation of Petitioner's Confrontation Clause rights because the record demonstrates any violation was harmless error and, therefore, did not prejudice Petitioner's defense.

Confrontation Clause violations are subject to review for harmless error. *See Bailey v. Morrison*, No. 23-1254, 2023 WL 7877830, at *3 (6th Cir. Aug. 11, 2023) (citing *Reiner v. Woods*, 955 F.3d 549, 555 (6th Cir. 2020). In Michigan, the Michigan Supreme Court has equated "outcome determinative" to "prejudice" when separating plain from harmless error, *People v. Vaughn*, 821 N.W.2d 288, 303 (Mich. 2012), and when evaluating the *Strickland* standard for ineffective assistance of counsel, *People v. Harris*, 840 N.W.2d 307, 308 (Mich. 2013).

The impact of an error on the outcome of the proceedings is also the focus of federal harmless error analysis. *See, e.g.*, *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (adopting as the standard for determining whether habeas relief is appropriate "whether the . . . error 'had substantial and injurious effect or influence in determining the jury's verdict.'"); *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (posing the question as "Do I, the judge, think that the error substantially influenced the jury's decision?"); *Brown v. Davenport*, 596 U.S. 118, 126 (2022) (stating that "a state prisoner . . . must show that the error had a 'substantial and injurious effect or influence' on the outcome of his trial" (quoting *Brecht*, 507 U.S. at 637)). The appellate court's decision that the error was not outcome determinative is the equivalent of a determination that the error was harmless under *Brecht*. *Kyles v. Whitley*, 514 U.S. 419, 435–36 (1995). The determination that any error was harmless under *Brecht* necessarily means that it is not prejudicial under *Strickland*. *See Kyles*, 514 U.S. at 436 (explaining that the *United States v. Agurs*, 427 U.S. 97 (1976), materiality standard, later adopted as the prejudice standard for ineffective assistance of counsel claims, requires the habeas petitioner to make a greater showing of harm than is necessary to overcome the harmless error test of *Brecht*); *see also Wright v. Burt*, 665 F. App'x 403, 410 (6th Cir. 2016) ("[O]ur previous analysis of *Strickland* prejudice applies to the assessment of whether the Confrontation Clause violation was harmless error under *Brecht*."); *Bell v. Hurley*, 97 F. App'x 11, 17 (6th Cir. 2004) ("Because we find the error to be harmless [under *Brecht*] Bell cannot meet the prejudice requirement of *Strickland* . . . ."); *Kelly v. McKee*, No. 16-1572, 2017 WL 2831019 at *8 (6th Cir. Jan. 24, 2017) ("Because Kelly suffered harmless error [under *Brecht*] at best, he cannot establish that he suffered prejudice [under *Strickland*].").

The Sixth Circuit has noted that when evaluating whether a Confrontation Clause error is harmless, the court should consider:

"the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, . . . and, of course, the overall strength of the prosecution's case."

*Hill v. Hofbauer*, 337 F.3d 706, 718 (6th Cir. 2003) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). Here, the trial court did not address whether the admission of the non-testifying analysts' report and statements was harmless error; instead, the court concluded that Petitioner had not demonstrated any actual prejudice for purposes of his ineffective assistance claim. The trial court properly noted that Hayhurst himself had compared the DNA sample taken from the hat to the sample of Petitioner's blood and concluded that the two samples matched. In light of Hayhurst's testimony regarding the analysis he performed, as well as the testimony of the two victims who conclusively identified Petitioner as the individual who committed the robberies, the Court cannot conclude that the admission of the non-testifying analysts' report and statements prejudice Petitioner's defense in any way. Thus, because the standard for prejudice under *Strickland* requires the Petitioner to make a greater showing of prejudice than is required under the standard for harmless error, Petitioner simply cannot satisfy the prejudice prong of the *Strickland* test.

In sum, Petitioner has not demonstrated that the trial court's rejection of this assertion of ineffective assistance is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground IV.

### b.    Failure to Object to Admission of Blood Sample

In habeas ground V, Petitioner faults counsel for failing to object to the admission of "the known sample of Petitioner's blood." (Pet., ECF No. 1, PageID.51.) According to Petitioner, this sample was obtained in violation of his Fourth Amendment rights and, therefore, should have been

33

excluded under the "fruits of the poisonous tree doctrine." (*Id.*) Petitioner argues that Detective

Jorgenson attempted to collect a blood sample from Petitioner on at least three separate occasions

"under the guise of a warrant." (*Id.*) Detective Jorgenson "then submitted a request for a warrant

based upon the false allegation that Petitioner['s] DNA was found on the Knicks hat." (*Id.*)

Petitioner argues that such an assertion by Detective Jorgenson was fraudulent. (*Id.*)

> Petitioner raised this claim in his Rule 6.500 motion, and the trial court rejected it, stating:

> [Petitioner] claims that the warrant allowing the detectives to collect a sample of [Petitioner's] DNA was based on a false allegation that [Petitioner's] DNA was found on a hat. [Petitioner] points to David Hayhurst's testimony that when the swab from the hat was first submitted to the laboratory, the lab "had nothing in our system" and that the first and last name were unknown. However, Hayhurst also testified that one of his colleagues performed a separate test by inputting the DNA profile from the hat into the lab's database to see if there could be an association. That test resulted in a match for "Christopher Charles Woods [sic]," or [Petitioner]. It was from that match that the detectives obtained a warrant to collect [Petitioner's] DNA. Therefore, contrary to [Petitioner's] claims, there is no evidence that the warrant was based on a false allegation. And [Petitioner's] trial counsel was not ineffective for failing to raise this argument.

(ECF No. 12-16, PageID.1433.)

The Supreme Court has noted that "[w]here defense counsel's failure to litigate a Fourth

Amendment claim competently is the principal allegation of ineffectiveness, the defendant must

also prove that his Fourth Amendment claim is meritorious and that there is a reasonable

probability that the verdict would have been different absent the excludable evidence in order to

demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *see also*

*Richardson v. Palmer*, 941 F.3d 838, 857 (6th Cir. 2019). Accordingly, Petitioner's ineffective

assistance claim requires consideration of the merits of Petitioner's Fourth Amendment claim and,

to the extent that Petitioner's Fourth Amendment claim lacks merit, his ineffective assistance claim

necessarily fails.

The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment requires "only three things" with respect to search warrants. *Dalia v. United States*, 441 U.S. 238, 255 (1979). First, the warrant must be issued by a "neutral and detached" magistrate "capable of determining whether probable cause exists." *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972). Second, there must be a finding of probable cause. *See* U.S. Const. amend. IV. Third, the search warrant must "particularly describe[e] the place to be searched, and the . . . things to be seized." *Id.*; *see also Maryland v. Garrison*, 480 U.S. 79, 84–85 (1987).

A defendant may be entitled to have a warrant voided when the warrant affiant's statements were deliberately false or made in reckless disregard for the truth and the affidavit's remaining content is insufficient to establish probable cause. *Franks v. Delaware*, 438 U.S. 154, 156 (1978). The burden rests on the defendant to establish by a preponderance of the evidence that the affidavit contains a reckless or deliberate falsehood and that with this material "set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Id.*

The trial court rejected this claim of ineffective assistance because Petitioner had not demonstrated that the warrant to obtain his blood sample was based upon a false allegation. Petitioner has not corrected that deficiency here. During Petitioner's trial, David Hayhurst testified that when the case was initially submitted to the state police laboratory, no suspect was listed. (Trial Tr. II, ECF No. 12-9, PageID.1146.) Hayhurst noted that a coworker had entered a portion of the unknown DNA profile from the hat into the laboratory's database "to see if there could be an association against anyone in the database." (*Id.*) That was "the first instance where an actual

35

name [became] attached to the case." (*Id.*) As noted by the trial court, Hayhurst testified that the database came back with a match to Christopher Charles Woods. (*Id.*) That report was then sent to law enforcement officers so that they could obtain a DNA sample from Petitioner. (*Id.*)

Based upon this testimony, Petitioner has not demonstrated that Detective Jorgenson, who Petitioner contends prepared the warrant to obtain the sample of Petitioner's blood, included false statements in the affidavit supporting the warrant. *See Franks*, 438 U.S. at 156. Rather, the state laboratory first obtained Petitioner's name by running the DNA sample obtained from the hat through the database. Based upon that match, Detective Jorgenson obtained the warrant to obtain Petitioner's blood sample. Simply put, the challenge that Petitioner claims his counsel failed to raise was meritless, and "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013); *see also Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim."). Accordingly, Petitioner is not entitled to relief with respect to habeas ground V.

### c.       Failure to Conduct Pretrial Preparatory Investigation

In habeas ground VI, Petitioner faults trial counsel for not conducting any pretrial investigation of the witnesses in this matter. (Pet., ECF No. 1, PageID.53.) Petitioner suggests that this resulted "in the prejudice that the [d]efense [c]ounsel was unable to subject the prosecution's case to any 'true' meaningful adversarial testing." (*Id.*)

Specifically, Petitioner faults counsel for not conducting any pretrial interviews of any of the prosecution's witnesses. (*Id.*, PageID.54.) He also suggests that counsel failed to investigate and challenge the foundation and chain of custody of the Knicks hat that was ultimately used to prepare the DNA profile that identified Petitioner as a suspect. (*Id.*, PageID.55.) Petitioner argues further that counsel should have "sought an expert witness to challenge the methodology used, and

36

the veracity of the witness's findings." (*Id.*, PageID.56.) Petitioner also avers that counsel should have sought an adjournment "when surprised with David Hayhurst, a NON-LISTED [government] witness." (*Id.*, PageID.58.)

Petitioner raised this claim in his Rule 6.500 motion, and the trial court rejected it. First, the trial court rejected Petitioner's claim that counsel failed to object to the late amendment of the prosecution's witness list to add David Hayhurst. (ECF No. 12-16, PageID.1430.) The trial court noted that Petitioner had failed to provide facts as to when Hayhurst was added "or the trial court's reasoning for allowing the addition." (*Id.*) The trial court also rejected Petitioner's claim regarding counsel's failure to investigate, stating:

> [Petitioner] next argues that his trial counsel was ineffective due to his failure to conduct any pretrial preparatory investigation of the prosecution's witnesses. The Court now finds that [Petitioner] has not sufficiently established that his trial counsel did not investigate or meet with any of the prosecution's witnesses. Rather, he only asserts in his affidavit that when he questioned his counsel as to the involvement of each of the prosecution's witnesses, his counsel told him he did not know.

> Even if [Petitioner] had sufficiently established that his trial counsel wholly failed to investigate these witnesses, he has failed to establish that, by doing so, [Petitioner] suffered actual prejudice. Defense counsel may be ineffective for failing to investigate witnesses if it deprived defendant of a substantial defense or undermined confidence in the trial's outcome. Only then[] can the Court determine that [Petitioner] suffered actual prejudice or that a different result was reasonably probable.

> [Petitioner] claims that, if defense counsel had investigated the witnesses who were to testify as to the DNA profile found in the Knicks hat, defense counsel could have obtained an exclusion of this evidence. For reasons previously discussed, the Court finds that much of David Hayhurst's testimony regarding the DNA found on the hat, and Exhibit 17, were admissible. Moreover, even if [Petitioner] had been successful in excluding the DNA evidence, there was other sufficient evidence linking him to the armed robberies, including identification by eyewitnesses and by his federal probation officer. [Petitioner] has also failed to provide any support for this theory that there was a "miscode" in the software used for the DNA analysis. Therefore, [Petitioner] has failed to establish that he has suffered actual prejudice from his trial counsel's alleged failure to interview witnesses.

(ECF No. 12-16, PageID.1432–1433.)

Petitioner offers nothing in his § 2254 proceedings to refute the state court's conclusions. A review of the record indicates that counsel thoroughly cross-examined the witnesses called by the prosecution. With respect to any possible witnesses that were not presented by the prosecution, Petitioner fails to demonstrate that their testimony would have been favorable to his defense in any way. Likewise, Petitioner provides no evidence that an expert was available to testify on his behalf and that an expert would have testified in the ways suggested by Petitioner. "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted); *see also Clark v. Waller*, 490 F.3d 551, 558 (6th Cir. 2007) (rejecting an ineffective assistance claim for the petitioner's failure to provide a "basis on which to conclude that failure to call a possibly favorable witness amounts to constitutionally deficient performance").

Overall, Petitioner fails to demonstrate that the trial court's rejection of this assertion of ineffective assistance is an unreasonable application of, *Strickland* or that it is based on an unreasonable determination of the facts. Petitioner, therefore, is not entitled to relief with respect to habeas ground VI.

### 3.    Appellate Counsel

In habeas ground VIII, Petitioner contends that appellate counsel rendered ineffective assistance. (Pet., ECF No. 1, PageID.64.) Petitioner does provide any factual support for this assertion. In his Rule 6.500 motion, Petitioner alleged that appellate counsel was ineffective for failing to assert the following arguments on direct appeal: "(1) the jury verdict form was constitutionally deficient, (2) the prosecutor intimidated the Walgreen's clerk into testifying, and

(3) Defendant's trial counsel was ineffective for a variety of reasons." (ECF No. 12-16, PageID.1425.) The trial court rejected Petitioner's arguments, concluding that the underlying claims lacked merit. (*Id.*, PageID.1427, 1429–1433.)

As thoroughly discussed *supra*, Petitioner's underlying claims lack merit. Thus, "appellate counsel's failure to raise [those] claim[s] on direct appeal cannot be deemed constitutionally deficient performance." *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003); *see also Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("If trial counsel performed adequately, our inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."). Petitioner, therefore, is not entitled to relief with respect to habeas ground VIII.

### E.    Ground VII—Jury Verdict Form

In habeas ground VII, Petitioner contends that the "jury verdict form in both cases was [c]onstitutionally [d]eficient and . . . effectively denied his right to a [t]rial by [j]ury." (Pet., ECF No. 1, PageID.61.) Specifically, Petitioner argues that the jury verdict form was deficient because "it did not allow for a general verdict of Not Guilty, or include a Not Guilty option for the robber[y] and it also did not include a general verdict of Not Guilty, or include a Not Guilty for the lesser included offense of robbery." (*Id.*, PageID.62.)

Petitioner raised his challenge to the jury verdict form in his Rule 6.500 motion, and the trial court relied upon state law to reject it. The trial court noted that Petitioner's jury verdict form "listed the possible verdicts as 'guilty of robbery as charged,' 'guilty of the lesser included offense of robbery,' or 'not guilty.'" Therefore, . . . the 'not guilty' verdict clearly referred to both the charged offense and the lesser included offense." (ECF No. 12-16, PageID.1426.) The trial court noted that because the "not guilty" option was listed after the two guilty options, it was clear that it "referred to both the offense charged and the lesser included." (*Id.*, PageID.1427.)

Upon review of the record, the Court concludes that Petitioner has failed to demonstrate any defect in the jury verdict forms that rise to the level of a constitutional violation. To obtain habeas relief based upon an allegedly improper jury instruction or verdict form, a petitioner must show that the instructions or form, taken as a whole, were "so infirm that they rendered the entire trial fundamentally unfair." *Doan v. Carter*, 548 F.3d 449, 455 (6th Cir. 2008) (quoting *Austin v. Bell*, 126 F.3d 843, 846–47 (6th Cir. 1997)). Moreover, the Supreme Court has held that use of a general verdict form does not violate due process. *See Schad v. Arizona*, 501 U.S. 624 (1991), *abrogated on other grounds recognized by Edwards v. Vannoy*, 593 U.S. 255, 265 n.4 (2021).

At the end of final jury instructions, the trial court recited the language of the jury verdict forms for the parties and the jury:

> Now, you should have two verdict forms here. I think the attorneys have seen them as well. The first one, chronologically, is in 17-07323-FC. The form identifies the court, Kent County Circuit Court; the case, People of the State of Michigan against Christopher Charles-Eubanks Wood; the final number indicates for clarification that this is the Walgreens case, on January 28 of 2017.
>
> It goes on to recite the verdict form:
>
> We, the jury in the above-entitled cause, all 12 jurors being in agreement, find upon our oath that the defendant, Christopher Wood, is—here are your three choices:
>
>> Guilty of robbery as charge[d];
>>
>> Guilty of the lesser included offense of robbery,
>>
>> Or; Not guilty.
>
> The second form is in the same format, 17-02032-FCt. For clarification, it states Marathon, February 4, 2017, the verdict form.
>
> We, the jury, in the above-entitled cause, all 12 jurors being in agreement, find upon our oaths that the defendant, Christopher Wood, is—again, you have the same three choices:
>
>> Guilty of robbery as charged;

40

Guilty of the lesser included offense of robbery, and;

Not guilty.

(Trial Tr. IV, ECF No. 12-11, PageID.1200.) Contrary to Petitioner's argument, the jury verdict forms clearly included the option for the jury to find Petitioner not guilty of both the armed robbery charges and the lesser-included offenses. Petitioner, therefore, cannot demonstrate that the trial court's rejection of this claim was contrary to, or an unreasonable application of, clearly established federal law, and he is not entitled to relief with respect to habeas ground VII.

### F.      Ground X—Prosecutorial Misconduct

In habeas ground X, Petitioner contends that "[t]he prosecutor's multiple instances of misconduct violated [Petitioner's] 5th, 6th, and 14th Amendment rights to due process of law, and a fair trial." (Pet., ECF No. 1, PageID.64.)

For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012). The *Parker* Court rejected an attempt to graft any additional requirements on the "very general" *Darden* standard.

41

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. 637, 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, 567 U.S. at 47 (internal quotation marks omitted).

Petitioner provides no factual support for his claim of prosecutorial misconduct. However, in his Rule 6.500 motion, Petitioner alleged that the prosecutor committed misconduct by: (1) denigrating the defense; (2) mischaracterizing the reasonable doubt standard; (3) making false assertions during opening statements; (4) invading the province of the jury by stating that a person depicted in the video of the robbery was Petitioner; and (5) intimidating the Walgreen's clerk into testifying. (ECF No. 12-15, PageID.1342–1355.) The Court construes Petitioner's prosecutorial misconduct claim to incorporate the five alleged instances of misconduct set forth in his Rule 6.500 motion. Although Petitioner raised those five instances in his Rule 6.500 motion, the trial court only addressed one of them—Petitioner's argument regarding intimidation of the witness. The Court, therefore, will review that claim under AEDPA's deferential standard and will review the other four alleged instances of misconduct *de novo*.

42

### 1.   Denigration of the Defense

Petitioner first suggests that the prosecutor committed misconduct by denigrating the defense during opening statements. (ECF No. 12-15, PageID.1342.) Petitioner contends that the prosecutor suggested that Petitioner's case could not be taken seriously by likening it to the novel *A Series of Unfortunate Events* by Lemony Snicket. (*Id.*) Petitioner also suggests that the prosecutor attacked Petitioner's counsel's credibility. (*Id.*) Specifically, Petitioner takes issue with the following comments:

> I—I don't compare it to this, but I think of the name Lemony Snicket's, "A Series of Unfortunate Events." For this to be a mistaken identity, and I have great respect for Mr. Pyrski, okay, in my head I'm thinking how is he going to get up there with this evidence and with a straight face and say it's not my client? Either Mr. Wood is the single most unfortunate man in Kent County history, because these incidents are six days apart, so either he's the most unfortunate man because he happens to be wearing a Knicks hat that has his DNA on it, and then six days later, weirdly enough, he's wearing the same exact outfit that an armed—an armed robber does, has on at Walgreen's—or, excuse me, at the Marathon gas station, he's wearing the same exact outfit, weirdly enough, and then we have at least four people identify him as the armed robbery suspect. So he is either the most unfortunate man or we have no mistaken identity and we know who this perpetrator is.

(Trial Tr. II, ECF No. 12-9, PageID.1125.)

A prosecutor may not "make unfounded and inflammatory attacks on the opposing advocate." *United States v. Young*, 470 U.S. 1, 9 (1985). Furthermore, it is improper for a prosecutor to argue that defense counsel "is attempting to mislead the jury." *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008) (citation omitted). Upon review of the remarks made by the prosecutor, the Court cannot agree with Petitioner that they constituted "unfounded and inflammatory attacks" and argument that Petitioner's counsel was attempting to mislead the jury. Rather, the remarks "were not so much a personal attack on counsel as a commentary on the strength of the merits of [Petitioner's] defense." *United States v. Graham*, 125 F. App'x 624, 634 (6th Cir. 2005).

43

Moreover, the prosecutor simply mentioned *A Series of Unfortunate Events* as support for an assertion that Petitioner's suggestion that this involved a case of mistaken identity made him the most unfortunate person to be mistaken as the perpetrator of two robberies that occurred six days apart. The Court, therefore, does not conclude that these comments rise to the level of prosecutor misconduct, and Petitioner is not entitled to habeas relief with respect to this aspect of habeas ground X.

### 2.      Mischaracterization of the Reasonable Doubt Standard

Next, Petitioner suggests that the prosecution mischaracterized the reasonable doubt standard during *voir dire*. (ECF No. 12-15, PageID.1343.) Petitioner faults the prosecutor for "want[ing] the jury to wholeheartedly buy into his characterization of reasonable doubt as being not that serious, it's very flawed and okay to not hold him to a higher standard." (*Id.*, PageID.1344.) Specifically, Petitioner contends that the prosecutor made numerous statements indicating that the "beyond a reasonable doubt" standard is not "a hundred percent certain" and that he asked numerous prospective jurors if they could hold the prosecution to that standard and not one that's higher. (*Id.*)

"[A]rguments of counsel generally carry less weight with a jury than do instructions from the court," and prosecutorial misrepresentations "are not to be judged as having the same force as an instruction from the court." *Boyde v. California*, 494 U.S. 370, 384–85 (1990). Furthermore, "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). After reviewing the prosecutor's statements made during *voir dire*, the Court cannot conclude that they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). The prosecutor did not speak erroneously when

he repeatedly asked jurors if they would hold him to the proper standard and not a higher one requiring 100% certainty. Rather, the prosecutor defined the standard using phrases that the prospective jurors could readily understand. Moreover, during final jury instructions, the trial court instructed the jury that the "lawyers' statements and arguments, and any commentary, are not evidence." (Trial Tr. IV, ECF No. 12-11, PageID.1197.) A jury is presumed to follow its instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). For these reasons, Petitioner is not entitled to federal habeas relief with respect to this assertion of prosecutorial misconduct.

### 3.    False Assertions During Opening Statements

Next, Petitioner faults the prosecutor for making false statements and misrepresentations regarding the evidence and testimony during opening arguments. (ECF No. 12-15, PageID.1346.) First, Petitioner faults the prosecution for "falsely stat[ing] to the jury that the witnesses will testify that Mr. Wood had a gun and that they were scared." (*Id.*) Petitioner also suggests that the prosecution falsely noted during opening statements that law enforcement "found a Knicks hat, that the Knicks hat had the DNA of Mr. Wood on it, and the same hat can be seen being worn by Mr. Wood in the video of the robbery." (*Id.*, PageID.1347.)

During opening statements, the prosecutor stated: "But both victims are going to testify to the fact that the defendant told them he had a gun." (Trial Tr. II, ECF No. 12-9, PageID.1124.) The prosecutor also noted both the Marathon clerk and video of the Marathon robbery would show that the suspect was wearing a Knicks hat. (*Id.*) Moreover, the prosecutor stated that the clerk would testify that "[s]he's scared, she can see he has a gun, so she's not fighting and not putting up a fuss." (*Id.*) Shortly thereafter, the prosecutor indicated that the jury heard testimony that after the suspect ran from the store, law enforcement found the same Knicks hat in an area close to the Marathon. (*Id.*)

45

When the Walgreen's clerk testified, she said that Petitioner told her that he had a gun, but that he did not display it. (*Id.*, PageID.1128.) The prosecutor asked the clerk if it was "[her] belief at the time that [Petitioner] had a gun," and she responded, "I wasn't sure." (*Id.*) When asked if she was scared at the time, she responded, "Uh, yeah. That was the first time I'd ever been robbed, so--." (*Id.*) Moreover, the Marathon clerk testified that Petitioner was acting like he had a gun. (Trial Tr. III, ECF no. 12-10, PageID.1166.) When asked if she was scared at the time, she responded, "Uh, more mad." (*Id.*) With respect to the Knicks hat, the Walgreen's clerk could not recall if any of the customers had on "any form of hat like a Knicks hat or anything like that on." (Trial Tr. II, ECF No. 12-9, PageID.1127–1128.) She thought that the suspect was wearing a beanie, but noted that he also had the hood of his "thick winter jacket" pulled up. (*Id.*, PageID.1128.)

Given these statements, the Court cannot conclude that the prosecutor so misrepresented the expected testimony during closing arguments such that the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). "Not every variance between the advanced description of the prosecutor in the opening statement of the summary of the testimony that he or she expects to introduce, and the actual presentation constitutes a violation of the right to confrontation or reversible error, when a proper limiting instruction is given." *Redding v. Horton*, No. 19-13599, 2021 WL 1720899, at *6 (E.D. Mich. Apr. 30, 2021) (citing *Frazier v. Cupp*, 394 U.S. 731, 736 (1969)). As discussed *supra*, the trial court instructed the jury that the lawyers' statements do not constitute evidence, and the jury is presumed to follow its instructions. *See Weeks*, 528 U.S. at 234. Petitioner, therefore, is not entitled to relief with respect to this assertion of prosecutorial misconduct.

46

### 4. Invading the Province of the Jury

Next, Petitioner suggests that the prosecutor "invaded the province of the jury by stating that the person depicted in the video of the robbery is in fact Mr. Wood." (ECF No. 12-15, PageID.1350.) During opening statements, the prosecutor made several statements that the jury would see an individual who looked like Petitioner in video footage and still photos made from that footage. (Trial Tr. II, ECF No. 12-9, PageID.1124–1125.) Petitioner also references numerous statements made by the prosecutor during questioning of witnesses, including asking them whether the individual in the video looked exactly like Petitioner. (ECF No. 12-15, PageID.1352–1354.)

Again, the Court cannot conclude that these statements and remarks by the prosecutor invaded the province of the jury such that they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). During opening statements, the prosecutor simply indicated his belief that numerous witnesses would testify that the individual depicted in the surveillance video looked quite similar to Petitioner. Moreover, the prosecutor asked the witnesses whether, in their opinion, the individual in the video looked identical or similar to Petitioner. Again, the trial court instructed the jury that the lawyers' arguments and questions are not evidence, and the jurors are presumed to follow their instructions. *See Weeks*, 528 U.S. at 234. The Court cannot conclude from the record before it that the prosecutor invaded the province of the jury by making these comments and statements; accordingly, Petitioner is not entitled to relief with respect to this assertion of prosecutorial misconduct.

### 5. Intimidation of Witness

Finally, Petitioner suggests that the prosecutor committed misconduct by intimidating the Walgreen's clerk into testifying. The trial court rejected this claim, stating:

> [Petitioner] next argues that the prosecutor intimidated the Walgreen's robbery witness into testifying as she did at the preliminary examination. The Court disagrees. The testimony that [Petitioner] points to only establishes that the detectives informed the witness of the consequences of failing to appear at the preliminary examination. Pursuant to MCR 2.506(E)(1), "[i]f a person fails to comply with a subpoena . . . the failure may be considered a contempt of court by the court in which the action is pending."[] Moreover, there is no evidence to support [Petitioner's] assertion that the detectives threatened or intimidated the witness to alter her testimony in any way. The transcript of the preliminary examination reveals only that the detective indicated to the witness that she could be put in jail if she did not appear. Although perhaps inappropriate, the detective's warning did not deprive [Petitioner] of his constitutional right to a fair trial.

(ECF No. 12-16, PageID.1427.)

During the August 9, 2017, preliminary examination, the Walgreen's clerk indicated during recross that the first time she had heard from the police was a week before the hearing. (ECF No. 12-6, PageID.1066.) When asked what occurred during that contact, the witness stated: "They told me I had to be here, or I was gonna be in jail with him, so I'm here." (*Id.*) After the conclusion of testimony, the trial court suggested "that the detectives work on their delivery." (*Id.*, PageID.1067.)

Upon review of the record, the Court cannot conclude that this alleged instance of misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). As the trial court noted, there is no evidence that the detectives threatened or intimidated the Walgreen's clerk to testify in a certain way at the preliminary examination. Because Petitioner has not demonstrated that the trial court's rejection of this assertion of prosecutorial misconduct is contrary to, or an unreasonable application of, clearly established federal law, Petitioner is not entitled to relief with respect to this aspect of habeas ground X.

48

In sum, Petitioner has not demonstrated that the prosecutor committed misconduct in any of the five alleged instances discussed above. Accordingly, Petitioner is not entitled to relief with respect to habeas ground X.

**G.      Ground XI—Cumulative Error**

Petitioner's eleventh and final ground for relief is that he was denied a fair trial because of the cumulative effect of the errors alleged in grounds I through X. (Pet., ECF No. 1, PageID.64.) Petitioner raised a cumulative error claim in his Rule 6.500 motion. (ECF No. 12-15, PageID.1327.) The trial court, however, did not explicitly address that claim in its opinion and order denying Petitioner's Rule 6.500 motion.

Under the AEDPA, a court may only grant habeas relief based on a misapplication of Supreme Court law. *See Bailey*, 271 F.3d at 655. The Sixth Circuit has noted that "[i]ndividually non-prejudicial errors, when taken together, may result in a fundamentally unfair trial that violates a defendant's due process rights." *United States v. Stuckey*, 253 F. App'x 468, 492 (6th Cir. 2007) (citing *United States v. Pierce*, 62 F.3d 818, 834–35 (6th Cir. 1995)); *see also Cockream v. Jones*, 382 F. App'x 479, 486 (6th Cir. 2010) (noting that "only actual *errors* may combine to generate cumulative prejudice"); *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004) (setting forth that aggregated harmless errors require reversal in situations where "the combined effect . . . was so prejudicial as to render [a] trial fundamentally unfair"). Here, however, Petitioner has not convinced this Court that any errors occurred during his criminal proceedings. Petitioner, therefore, is not entitled to relief on habeas ground XI.

**IV.      Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a

"substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## <u>Conclusion</u>

The Court will enter an order and judgment denying the § 2254 petition as well as a certificate of appealability.

Dated:   <u>August 28, 2024</u>         <u>/s/ Paul L. Maloney</u>
                                           Paul L. Maloney
                                           United States District Judge